## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISON

| | | |
|---|---|---|
| BENJAMIN PEDRAZA III, | ) | CASE NO. 1:22-CV-02256-PAG |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN KEITH J. FOLEY, | ) | REUBEN J. SHEPERD |
| | ) | |
| Respondent. | ) | **REPORT AND RECCOMENDATION** |
| | ) | |

## I.       Introduction

Petitioner Benjamin Pedraza, III ("Pedraza") filed a *pro se* habeas corpus petition

("Petition") on December 15, 2022, pursuant to 28 U.S.C. § 2254 regarding his convictions for

Pandering Sexually Oriented Matter Involving a Minor. (ECF Doc. 1). This matter was referred

to me for the preparation of a Report and Recommendation. (Non-document entries of Dec. 15,

2022 and Apr. 2, 2024). Respondent Warden Keith J. Foley[1] ("Respondent") filed a return of

writ on November 9, 2023. (ECF Doc. 13). Pedraza was permitted until March 4, 2024 to file a

traverse. (Non-document entry of Jan. 13, 2024). No traverse was filed, making this case ripe for

review.

---

[1] In the Return of Writ, Respondent asserts that Pedraza has been released from Prison and is
under post-release control, making Pedraza's supervising parole officer the proper respondent.
However, the record does not demonstrate who Pedraza's supervising parole officer is, and
because he is under post-release control supervision the Petition is not moot. *See Carafas v.
LaVallee*, 391 U.S. 234, 237-39 (1968); *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998).

## II.     Factual Background

The Ohio Ninth District Court of Appeals summarized the facts of Pedraza's convictions

as follows:

> {¶2} Mr. Pedraza met the victim ("T.B.") when they both worked at a Winking
> Lizard restaurant, and the couple soon entered into a relationship together. In May
> of 2018, 30-year-old Mr. Pedraza and 16-year-old T.B. rented a Brunswick hotel
> room and used T.B.'s cell phone to film themselves engaged in sexual activity. Two
> videos in particular were created or recorded: one video depicts the couple engaging
> in vaginal intercourse, while the other depicts Mr. Pedraza performing oral sex on
> T.B.
>
> {¶3} Upon discovering sexually explicit emails between the couple, T.B.'s mother
> contacted the police and provided them with T.B.'s cell phone. Mr. Pedraza was
> indicted on two counts of pandering sexually oriented matter involving a minor,
> felonies of the second degree. After a jury trial, he was found guilty on both counts.
> The trial court ordered a pre-sentence investigation report ("PSI") and later
> sentenced Mr. Pedraza to five years in prison for each count, to be served
> concurrently with each other, and classified him as a Tier II sex offender.

*State v. Pedraza*, No. 19CA0049-M, 2020 WL 1989484, at *1-3 (Ohio Ct. App., Apr. 27, 2020)

("*Pedraza I*"). These factual findings are presumed correct unless Pedraza rebuts this

presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## III.    State Court History

### A.     Trial Proceedings

Pedraza was indicted with two counts of Pandering Sexually Oriented Matter Involving a

Minor in violation of R.C. § 2907.322(A)(1)(C) on September 6, 2018 by a Medina County,

Ohio grand jury. (ECF Doc. 13-1, pp. 5-6). On September 20, 2018, Pedraza, represented by

appointed counsel, pled not guilty to the indictment. (*Id.* at p. 7).

Pedraza, through counsel, filed a motion to continue the December 3, 2018 trial date on

November 29, 2018 due to "receiv[ing] a huge amount of discovery from the State of Ohio[.]"

(*Id.* at p. 8). The trial court granted Pedraza's motion and continued trial to February 25, 2019. (*Id.* at p. 10).

On January 24, 2019, Pedraza filed a *pro se* motion requesting new counsel be appointed, claiming he and his current counsel had differing opinions and he was concerned that his attorney had acted unethically. (*Id.* at pp. 11-12). The following day, Pedraza filed a *pro se* Speedy Trial Motion. (*Id.* at p. 13).

On February 1, 2019, the trial court granted a Motion to Withdraw filed by Pedraza's counsel and appointed Pedraza new counsel. (*Id.* at p. 15). Pedraza's new counsel filed a motion to continue trial because she needed "additional time to evaluate the evidence and prepare for trial." (*Id.* at p. 16). The motion stated that Pedraza was "in agreement with this request to continue." (*Id.*). The trial court granted the motion, and continued trial to April 22, 2019. (*Id.* at p.18).

Pedraza, through counsel, filed a Motion for Leave to File Pre-Trial Motions requesting leave of court to file an untimely motion to suppress on April 8, 2019. (*Id.* at p. 19). The motion noted that Pedraza notified counsel on April 4, 2019 of his desire to challenge the search of a cell phone at issue. (*Id.*). The motion for leave was denied by the trial court on April 9, 2019. (*Id.* at p. 21).

The case proceeded to trial on April 22, 2019. (*Id.* at p. 22). The jury found Pedraza guilty on both counts on April 24, 2019. (*Id.*). On June 13, 2019, the trial court sentenced Pedraza to five years in prison on each count to be served concurrently and designated him a Tier II Sex Offender. (*Id.* at p. 25).

### B.      Appellate Proceedings

On June 28, 2019, Pedraza, through appointed appellate counsel, filed a notice of appeal

with Ohio's Ninth District Court of Appeals. (*Id.* at p. 27). Pedraza filed an appellate brief on

November 18, 2019 raising the following three assignments of error:

1.    The trial court erred as a matter of law in imposing separate sentences for
      the allied offenses in violation on of the Double Jeopardy Clause of the 5th
      Amendment to the U.S. Constitution and Article I, Sections 10 of the Ohio
      Constitution.

2.    The trial court erred to the prejudice of Mr. Pedraza by imposing a sentence
      based upon facts not contained in the record and the trial court's failure to
      consider R.C. 2929.12, in violation of Mr. Pedraza's rights under the Sixth
      and Fourteenth Amendments to the United States Constitution, and Article
      I, Sections 10 and 16 of the Ohio Constitution.

3.    Mr. Pedraza was denied effective assistance of counsel and was denied his
      constitutional rights against unreasonable searches and seizures guaranteed
      by the Fourth, the Fifth, and Fourteenth Amendment to the U.S.
      Constitution and Article I, Section 14 of the Ohio Constitution.

(*Id.* at pp. 32-33). The State of Ohio filed its appellate brief on December 6, 2019. (*Id.* at pp. 69-

97). The appellate court affirmed Pedraza's convictions and sentence on April 27, 2020. (*Id.* at

pp. 98-108; *Pedraza I*, No. 19CA0049-M, 2020 WL 1989484, at *1-3 (Ohio Ct. App., Apr. 27,

2020).).

Pedraza appealed *pro se* to the Ohio Supreme Court on July 8, 2020.[2] (ECF Doc. 13-1,

pp. 109-10). In his memorandum in support of jurisdiction, Pedraza argued the following three

propositions of law:

1.    The trial court erred as a matter of law in imposing separate sentences for
      the allied offenses in violation of the Double Jeopardy Clause of the Fifth
      Amendment to the U.C. Constitution and Article I, Section 10 of the Ohio
      Constitution.

---

[2] The Ohio Supreme Court granted Pedraza's request to file a delayed jurisdictional appeal on
July 21, 2020. (ECF Doc. 13-1, pp. 114-15).

2.      The trial court erred to the prejudice of Appellant by imposing a sentence
based upon facts not contained in the record and the trial court's failure to
consider R.C. 2929.12, in violation of Appellant's rights under the Sixth
and Fourteenth Amendments to the United States Constitution, and Article
I, Section 10 of the Ohio Constitution.

3.      Appellant was denied effective assistance of counsel and his constitutional
rights against unreasonable searches and seizures guaranteed by the Fourth,
Fifth, and Fourteenth Amendments of the United States Constitution and
Article I, Section 14 of the Ohio Constitution.

(*Id.* at p. 117). The State of Ohio opposed jurisdiction on July 20, 2020. (*Id.* at pp. 146-64). On

September 1, 2020, the Ohio Supreme Court declined jurisdiction of Pedraza's appeal. (*Id.* at p.

165).

Pedraza, *pro se*, filed a petition for writ of certiorari to the United States Supreme Court

on November 30, 2020, raising one question:

Whether or not a third party, Appellant, has an expectation of privacy, in terms of
cell-phone data that a police officer or detective obtains, however, without a
warrant and intends to use said evidence specifically against Appellant in the
process of evidence collecting and ultimately seeking conviction? Furthermore, is
aforesaid action a violation of Appellant's Fourth, Fifth, Eighth, and Fourteenth
Constitutional Amendments, which Appellant should expect protection from
actions that infringe upon them?

(*Id.* at pp. 166-77). Pedraza's petition was denied on February 22, 2021. (*Id.* at p. 178).

**B.      Post-Conviction Proceedings**

Pedraza filed several *pro se* postconviction motions. On September 19, 2019, Pedraza

filed a motion for postconviction relief pursuant to R.C. § 2953.21 arguing that his convictions

were void or voidable due to a violation of his Fourth Amendment rights against unreasonable

searches and seizures. (*Id.* at pp. 179-82).

On May 6, 2020, Pedraza filed a Motion to Render Judgment, requesting the trial court

rule on his January 25, 2019 speedy trial motion. (*Id.* at p. 185). Pedraza filed a "Motion to

Dismiss Conviction and Discharge Pursuant to R.C. 2945.71-73" on June 11, 2020, challenging

5

his conviction based on an alleged violation of his speedy trial rights. (*Id.* at pp. 189-94). The trial court treated the Motion to Dismiss Conviction as a petition for postconviction relief pursuant to R.C. § 2953.21 and denied it, stating "Mr. Pedraza's claim regarding a speedy trial violation could have and therefore should have been raised at the trial court and on his appeal in case 19CA0049-M. As such, it is barred by the doctrine of res judicata." (*Id.* at pp. 198-200). No appeal was taken from the trial court's denial.

Pedraza again challenged his convictions on speedy trial grounds in his October 26, 2020 "Motion . . . to Dismiss Indictment for Failure of the State to Provide Defendant Incarcerated in Lieu of Bail with Speedy Trial Under Ohio Rev. Code 2945.71 Crim. Rule 48." (*Id.* at pp. 201-03). This motion was denied on October 27, 2020. (*Id.* at p. 204). Pedraza filed a timely notice of appeal with the Ohio Ninth District Court of Appeals on November 13, 2020. (*Id.* at p. 205). In his *pro se* appellate brief Pedraza raised the following two assignments of error:

1. The trial court erred by failing to bring appellant to trial within 90 days as required by O.R.C. 2945.71(B)(2), denying him his right to speedy trial guaranteed to him by the Sixth Amendment to the United States Constitution and Article 1 of Section 10 of the Ohio Constitution.

2. The trial court abuse[d] its discretion in not granting the motion to dismiss indictment filed on October 26, 2020.

(*Id.* at p. 208-15).[3] The State of Ohio filed its appellate brief on February 9, 2021. (*Id.* at p. 219-32). The appellate court affirmed the trial court's denial. (*Id.* at p. 234-37).

Pedraza appealed, through counsel, to the Ohio Supreme Court. (*Id.* at p. 239-40). Pedraza raised the following proposition of law: "Whether Defendant can assert Speedy Trial at any time because it is an important Constitutional right." (*Id.* at p. 242). The State of Ohio

---

[3] Pedraza attached a copy of his January 25, 2019 speedy trial motion to his appellate brief. (ECF Doc. 13-1, p. 344-45). The appellate court accepted his brief but struck this attachment for not complying with Ohio Ninth District Court of Appeals Local Rule 7. (ECF Doc. 13-1, p. 233).

opposed jurisdiction. (*Id.* at p. 252-63). The Ohio Supreme Court declined jurisdiction on December 14, 2021. (*Id.* at 264).

Pedraza filed a complaint for a writ of procedendo with the Ohio Ninth District Court of Appeals on September 8, 2020, requesting that his trial judge, Judge Kimbler, be compelled to rule on his January 25, 2019 and May 6, 2020 motions regarding his speedy trial rights. (*Id.* at p. 265-84). Judge Kimbler filed a Motion to Dismiss Pedraza's complaint. (*Id.* at p. 285-89). The appellate court granted Judge Kimbler's motion to dismiss and found that Pedraza's motions were implicitly denied making this issue moot. (*Id.* at p. 290-94).

On October 18, 2021, Pedraza filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (*Id.* at p. 295-305). Pedraza argued his appellate counsel was ineffective for failing to raise the following assignments of error:

1. The trial court erred in denying Mr. Pedraza's motion to dismiss in violation of ORC 2945.71 and ORC 2945.72 as well as the United States and State of Ohio Constitutions as Mr. Pedraza's right to a speedy trial was violated.

2. The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the state of Ohio.

3. The convictions are against the manifest weight of the evidence in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and of the Ohio Constitution.

(*Id.* at p. 298). The State of Ohio opposed Pedraza's application to reopen. (*Id.* at pp. 306-16). The appellate court denied Pedraza's application noting that it was untimely, and that Pedraza had failed to show good cause for why it was untimely filed. (*Id.* at pp. 317-18). No appeal was taken from this denial.

In a November 2, 2023 journal entry, the court stated that after reviewing the docket and noting that it had ruled on "several post-conviction motions[,]" it had not "journalized a decision

on the petition filed on September 19, 2019." (*Id.* at p. 319). The court denied Pedraza's

September 19, 2019 motion for postconviction relief based on the doctrine of res judicata. (*Id.* at

pp. 319-22). No appeal was taken from this denial.

## II.    Federal Habeas Corpus Petition

Pedraza raises four grounds for relief in his petition:

**GROUND ONE:**
Petitioner's trial counsel was ineffective for failing to properly request leave to
plead pre-trial motions and failing to file a motion to suppress the cell phone
evidence thereby allowing petitioner's constitutional rights against unreasonable
search and seizure to be violated in contravention of the Fourth, Fifth and
Fourtee[n]th Amendments to the United States Constitution.

**Supporting Facts:**
It was plain error and ineffective assistance of counsel when during the course of
the Petitioner's criminal proceedings, trial counsel did not raise the issue of lack of
search warrant to access a cell phone contents within. Moreover, it was a violation
to the Portioner's Fourth Amendment rights against unreasonable search and
seizure to allow the admission of the cell phone records without a search warrant.
On April 8th, 2019 trial counsel filed a Motion for Leave to Ple[a]d a Pre-Trial
motion asserting that it was in the interests of justice to grant the motion. The trial
court summarily denied this motion without a hearing on April 9th, 2019. Trial
Counsel was the second attorney of the record for the Petitioner in this case and
was first appointed on February 1, 2019. Trial counsel's Motion for Leave to
Ple[a]d was not filed until Fourteen (14) days before the scheduled trial date.
The cell phone in this case was central to the Prosecutor's case and was the only
evidence the State had to prove the alleged offenses of the Petitioner. Both trial
counsels in this case should have recognized the critical nature of this evidence on
the State's case-in-chief and sought a motion to suppress, fell way below an
objective standard of reasonableness. As the result, but for this tr[ia]l counsel's
failure, this evidence would have been excluded for the State's failure to obtain a
search warrant to obtain the cell phone's content.
In the case at hand, the search warrant was required for the police to search the
contents of the cell phone. The consent from the alleged victim's parent: [B.B.] was
not valid. [B.B.] did not own the cell phone and she did not have any common
authority or mutual use of the cell phone. The Detective Smith investigating the
case determined that [T.B.]'s Father purchased the cell phone; but it was for
[T.B.]'s exclusive use. Smith determined that both the laptop and the phone were
used exclusively by []. In this case, there was no concern for the officer's safety
and no exigent circumstances that would have justified searching the cell phone
without first obtaining a search warrant. The Medina Police Department had
possession of the cell phone. Furthermore, the police were aware that [B.B.] did not

own the cell phone. Moreover, trial counsel's lack of performance was grossly ineffective when she failed to file motions to suppress to raise the issues that the Petitioner's constitutional rights against unreasonable search and seizures were violated. There was an obvious bias to not file a motion that would have been granted. The failure to pursue it was prejudicial because without the excluded evidence, the Petitioner would have been ACQUITTED. It is clear that there was a reasonable probability that the trial result would have been different but for the deficiencies of trial counsel. As the result, the Petitioner's conviction and imprisonment within the respondent's custody is contrary to clearly established Federal Law and the United States Constitution. Wherefore the Petitioner moves this Court to issue the Writ of Habeas Corpus.

**GROUND TWO:**

The Petitioner's Due Process Rights pursuant to the Fifth, and Fourteenth Amendment Double Jeopardy Clause of the United States Constitution, were violated because he was sentenced twice for the same offense and/or allied offenses, crimes of similar import, duplicate charges for same offense.

**Supporting facts:**

The Fifth Amendment to the United States Constitution provides in part that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. Similarly, Ohio Const. art. 1 § 10 provides that no person shall be twice put in jeopardy for the same offense. The double jeopardy clause is enforceable against the states through the Fourteenth Amendment. The clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction and/or multiple punishments for the same offense. The question is whether each offense contains an element not contained in the other; if not, they are the same offense barred by double jeopardy. Both counts One and Two also share the month of May as an overlap. In this case, the indictments are identical, therefore, there is not an element contained in one but not the other. While the counts have date ranges attached to them both counts have matching date ranges, and many others overlap. The overlap in dates between certain counts gives the jury an opportunity to convict twice for an alleged crime committed within those date ranges. In North Carolina v. Pearce, 395 U.S. 711 (1969) the Supreme Court interpreted the Fifth Amendment to protect against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction and it protects against multiple punishments for the same offense.

The Petitioner was multiply punished for the same offense in violation of the Constitution's Double Jeopardy Clause when the trial court failed to merge his Pandering Sexually Oriented Matter Involving a Minor, stemming from a single act involving one alleged victim, for sentencing purposes.

In the case at hand, the evidence shown in the trial proceedings that the defendant was accused of one recording of a video that resulted in charges brought against him. Additionally, there was another recording that resulted in charges being brought against him, however, the second video that was shown included the same conduct; the alleged victim was the holder of the video recording device, in which petitioner was performing the alleged act on the victim. Therefore, there is no legal way the petitioner could have been t[ri]ed for both of the counts of the same offense twice legally. To be clear, the trial court violated the petitioner's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by duplicating offenses that are allied in nature and similar in import.

**GROUND THREE:**
The petitioner was prejudice[d] by, (sic) due process clause of the law and Sixth Amendment Speedy Trial clause when the trial court failed to seek dismissal of the indictment on the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution.

**Supporting facts:**
The Petitioner was indicted on September 6, 2018, the petitioner was arrested on September 19, 2018 and remained in County jail. The petitioner filed a request for discovery and a bill of particulars. The docket does not reflect that the State responded to these[] and therefore, we must not treat these as tolling event[s] given that any response by the State was untimely. Defense counsel filed a motion to continue the trial on December 10, 2018 and on February 15, 2019. The Trial Court on November 29, 2018 and February 15, 2019 unilaterally tolled the petitioner['s] speedy trial rights for extended periods of time with no additional information that would explain why these periods of time are reasonable. The December 10, 2018 entry appears to toll the time until "the date set forth above" but there are multiple dates above and no explanation for why this 67-days (until the next tolling entry is placed on the record) tolling is reasonable. The February 15, 2019 entry does the same thing with essentially the same wording. The petitioner filed a pro se Motion to Dismiss as a result of his Speedy Trial right being violated on January 25, 2019 during the time he was unrepresented. The Trial Court never addressed his Motion. The State never proved that the petitioner was brought to trial in the specified period of time. The Petitioner never waived his Right to Speedy Trial. At first glance, it appears that there are long periods of tolling which occurred in the petitioner's case which were placed by entry of the Trial Court with no further explanation. However, prior Appellate Counsel failed to address the speedy trial issue in that the Trial Court was incorrect in tolling the Speedy Trial for long periods of time with no explanation of why it was reasonable. Therefore, the only way the petitioner to truly reach justice is through Habeas Corpus then this court can evaluate all facts of this case and superimpose the law upon the facts of this case. The Supreme Court of Ohio declined to accept jurisdiction of the petitioner's case on more than one occasion (the actual number is three times). Therefore, this Honorable Court does have jurisdiction over said matter and this issue has been exhausted totally at the State level.

**GROUND FOUR:**

The Petitioner was denied equal protection of the law, due process of the law and ineffective assistance of appellate counsel when appellate counsel failed to raise the issues of the jury trial court which prejudiced the petitioner pursuant to the Fifth, and Fourteenth Amendment to the United States Constitution.

**Supporting Facts:**

Appellate Counsel was ineffective for failing to raise these issues on Appeal. The Appellate Counsel performance is deemed ineffective due to the proven fallen below performance, an objective standard of reasonable representation and in addition prejudice that arises. The Appellate Counsel deficient performance was prejudice towards the Petitioner and is proven that there exists a reasonable probability that were it not for Appellate Counsel errors the result of the appeal would have been different. Counsel focused on two assignments of error which were sentencing issues and failed to raise any important related issues to the jury trial except the third assignment of error the unreasonable search and seizure. Appellate Counsel deficient representation was fallen way below the objection standard of reasonable representation because an Attorney with a matter on Appeal in which the Appellant has proceeded to a jury trial should consider all issues, not just sentencing issues, and towards any legitimate issues related to jury trial that were not raised should have been raised including but not limited to the Speedy Trial Violation and many other due process violation mention within this petition. The Appellant Counsel failed to do so and there is reasonable probability that if reviewed correctly all aspects of this matter would have been found, in which the deficiency prejudicially affected the outcome of the appeal.

By the trial court violating defendant's Speedy Trial Rights and other due process violation; namely, The State of Ohio filing a Motion in Limine in the Medi[na] County Court of Common pleas to prevent Defendant from introducing evidence that would bring to light evidence that would exonerate him and remove him from guilt. Therefore, the trial court reached a verdict by way of jury that was against the manifest weight of evidence. Preventing the facts included in the Motion in Limine, in part, contributed to a miscarriage of justice at the very beginning of the proceedings, which destroyed any chance of the defendant reaching justice and truth, as the result of his actions that were legal expressed by the letter of law. Moreover, there were many due process violations at the trial level that led the petitioner not being able to reach justice at the very inception of the proceedings. Therefore, the only way the petitioner to truly reach justice is through Habeas Corpus then this court can evaluate all facts of this case and superimpose the law upon the facts of this case. The Supreme Court of Ohio declined to accept jurisdiction of the petitioner's case on more than one occasion (the actual number is three times). Therefore, this Honorable Court does have jurisdiction over said matter and this issue has been exhausted totally at the State level. The petitioner seeks to have his conviction and sentence be vacated, due to the State violating his Sixth Amendment right to a speedy trial.

(ECF Doc. 1, pp. 4-11).

### III.    Federal Habeas Corpus Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Pedraza's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

shall not be granted . . . unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

12

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

13

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted).  Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## IV.    Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review

claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.    Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1)  reliance upon federal cases employing constitutional analysis;

(2)  reliance upon state cases employing federal constitutional analysis;

(3)  phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B.    Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim;

16

and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## V. Discussion

I find that Pedraza fairly presented Ground One, containing his Fourth Amendment Search and Seizure issue to the state court for adjudication by raising it both in his direct appeal and to the Ohio Supreme Court. Accordingly, his first ground for relief will be discussed on the

merits. However, as explained in more detail below, Pedraza's second, third, and fourth grounds are procedurally defaulted.

Pedraza's grounds for relief will be at times discussed out of order for ease of analysis.

### A.      Ground One: Search and Seizure

In his first ground for relief, Pedraza argues that both of his appointed trial attorneys were constitutionally ineffective for "failing to properly request leave to plead pre-trial motions and failing to file a motion to suppress the cell phone evidence[.]" Pedraza's contention under this ground for relief is that the police searched T.B.'s cell phone without a warrant and said search violated his rights protected by the Fourth Amendment to the United States Constitution. In contrast, Respondent argues that "the state court of appeals correctly determined Pedraza lacked standing to raise a Fourth Amendment challenge to the victim's cell phone" thus any challenge to the search of that phone by trial counsel "would have been futile." (ECF Doc. 13, p. 22).

At the outset, I note that Pedraza's second trial counsel did seek leave to file a motion to suppress the cell phone evidence. (ECF Doc. 13-1, p. 19). The trial court denied the motion. (*Id.* at p. 21). However, even if that motion had not been filed, Pedraza has not demonstrated that the Ohio appellate court unreasonably applied federal law when it denied his ineffective assistance of counsel claim on the basis that he lacked standing to challenge the search of the victim's cell phone.

The Ohio Ninth District Court of Appeals analyzed Pedraza's ineffective assistance of counsel claim as follows:

> {¶26} Mr. Pedraza argues that his counsel was ineffective for not filing a motion to suppress "rais[ing] the issue of the lack of a search warrant to access the cell phone contents." He argues that the mother's consent for police to search her daughter's phone was not valid. Mr. Pedraza believes the admission of "critical" "cell phone records" obtained without a search warrant violated his constitutional rights against unreasonable searches and seizures.

{¶27} Not only does the failure to file a motion to suppress not constitute ineffective assistance of counsel *per se*, *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65, but the argument Mr. Pedraza claims his counsel should have raised in a motion to suppress concerns the constitutional rights of third parties. "Fourth Amendment rights are personal in nature and may not be vicariously asserted by others." *State v. Dennis*, 79 Ohio St.3d 421, 426 (1997). "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated * * *, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171-172 (1969).

{¶28} Thus, because Mr. Pedraza lacked standing to challenge any search of T.B.'s cell phone in this case, he cannot show how a motion to suppress evidence obtained from that cell phone would have been successful. Likewise, his counsel's decision to not file such a meritless motion cannot be deemed deficient performance. Because Mr. Pedraza has failed to show any deficient performance by counsel, we need not address the issue of prejudice, and his ineffective assistance claim must fail. See *Lortz* at ¶ 34.

*Pedraza I*, No. 19CA0049-M, 2020 WL 1989484, at *5 (Ohio Ct. App., Apr. 27, 2020).

In his pro se memorandum in support of jurisdiction to the Ohio Supreme Court, Pedraza argued he received ineffective assistance of counsel when his trial counsel "should have . . . sought a motion to suppress" the cell phone evidence and the failure to do so rendered counsel's assistance ineffective. (ECF Doc. 13-1, p. 54).

"Because the Fourth Amendment protects '[t]he right of the people to be secure in *their* persons, houses, papers, and effects, against unreasonable searches and seizures,' U.S. Const. amend. IV (emphasis added), Fourth Amendment rights are said to be 'personal.'" *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022) quoting *Rakas v. Illinois*, 439 U.S. 128, 133 (1978) (citation omitted). "In order to qualify as a person aggrieved by an unlawful search and seizure one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Rakas*, 439 U.S. at 134-35 (internal quotation marks omitted). As such, a defendant challenging a search or seizure must

19

demonstrate that "'his own'" rights were "'infringed.'" *Byrd v. United States*, 138 S. Ct. 1518, 1526, (2018) quoting *Rakas*, 439 U.S. at 133; *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022). The concept of standing is utilized as a "shorthand" for this requirement. *Id.* at 1530.

As the Ninth District noted, U.S. Supreme Court precedent provides that "'[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated . . . not by those who are aggrieved solely by the introduction of damaging evidence.'" *Pedraza I*, 2020 WL 1989484, at *5, quoting *Alderman v. United States*, 394 U.S. 165, 171-72 (1969). In his Petition, Pedraza is not raising a search or seizure issue related to his own, personal rights; he has not alleged that a search was levied against himself. Rather, as acknowledged by the state appellate court, he is challenging the "search" of a third party's property, a challenge he has no authority to raise.

And, because the Fourth Amendment challenge was unavailable to him, Pedraza cannot show that his counsel's performance was deficient for failing to raise the issue at trial. Thus, there was no Sixth Amendment violation.

The Sixth Amendment provides in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Supreme Court set forth two requirements that must be shown to establish that an attorney was constitutionally ineffective in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688.

"Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Thus, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (internal citation omitted).

Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When the state appellate court analyzes an ineffective assistance of counsel claim on the merits, a federal habeas court applies AEDPA deference to the state court's adjudication pursuant to § 2254(d). *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011). The U.S. Supreme Court explained the added layer of deference as follows:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim

can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 103-05 (2011).

Here, the Ninth District considered the issue as follows:

> {¶28} Thus, because Mr. Pedraza lacked standing to challenge any search of T.B.'s cell phone in this case, he cannot show how a motion to suppress evidence obtained from that cell phone would have been successful. Likewise, his counsel's decision to not file such a meritless motion cannot be deemed deficient performance. Because Mr. Pedraza has failed to show any deficient performance by counsel, we need not address the issue of prejudice, and his ineffective assistance claim must fail. See *Lortz* at ¶ 34.

*Pedraza I*, 2020 WL 1989484, at *5. With this, the state appellate court determined that counsel's performance was not deficient and his Sixth Amendment rights were not violated. Likewise, applying the double-deference required of a federal court sitting in habeas review, I find that the Ohio Ninth District Court of Appeals' denial of his ineffective assistance of counsel claim was not contrary to and did not involve an unreasonable application of federal law.

Accordingly, I recommend that Pedraza's first ground for relief be denied.

## B.    Ground Two: Double Jeopardy

In his second habeas ground, Pedraza argues that the trial court violated his constitutional rights protecting him against double jeopardy because he was punished multiple times for the same offense. (ECF Doc. 1, pp. 6-7). In response, Respondent argues that this issue is procedurally defaulted because Pedraza did not preserve this issue for appellate review by making a contemporaneous objection at his sentencing hearing and the appellate court's subsequent review for plain error is not equivalent to a review on the merits. (ECF Doc. 13, pp.

22

12-13). Pursuant to *Maupin*, I agree with Respondent and recommend that the District Court dismiss Ground Two as procedurally defaulted.

The first *Maupin* prong is met because Pedraza failed to comply with Ohio's contemporaneous objection rule. In Ohio, a criminal defendant must make a contemporaneous objection to an alleged trial court error at the trial court level or forfeit the claim for appellate review. *State v. Rogers*, 38 N.E.3d 860, 866 (Ohio 2015); see also *Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (recognizing Ohio's contemporaneous objection rule). Appellate courts can only review a forfeited claim under a deferential "plain error" standard. *Rogers*, 143 Ohio St.3d at 391-92; Ohio Crim. R. 52(b).

> As to the second *Maupin* prong, the state appellate court enforced the contemporaneous objection rules against Pedraza when it reviewed his forfeited Double Jeopardy claim for plain error in his direct appeal. In *Pedraza I*, Pedraza raised an assignment of error alleging that his double jeopardy rights were violated when he received two sentences for "a single course of conduct" that had "no separate animus[.]" (ECF Doc. 13-1, p. 47). Addressing this assignment of error, the Ohio Ninth District Court of Appeals acknowledged that Pedraza "never raised the issue of allied offenses at the trial court level and has thus forfeited all but plain error on appeal." *Pedraza I*, No. 19CA0049-M, 2020 WL 1989484, at *3 (Ohio Ct. App., Apr. 27, 2020). The court concluded:Because the offenses were committed separately and with a separate animus, Mr. Pedraza has failed to demonstrate a reasonable probability that his crimes were allied offenses of similar import. *See Beech*, 2019-Ohio-120, at ¶ 17. He has therefore failed to establish any error, let alone plain error, committed by the trial court in this matter.

*Id.*

Next, under *Maupin,* I look to whether the procedural rule enforced is an independent and adequate state ground to deny federal habeas review. The Sixth Circuit has found that the contemporaneous objection rule is an adequate and independent basis to deny federal habeas review. *See Scott v. Mitchell*, 209 F.3d 854, 873 (6th Cir. 2000); *Saxton v. Forshey*, No. 22-3752, 2023 WL 2368818, at *3 (6th Cir. 2023) (finding that an Ohio appellate court's review of a double jeopardy claim for plain error was the enforcement of a procedural rule.).

Accordingly, the first three *Maupin* prongs have been met because Pedraza did not comply with the contemporaneous objection rule when he did not object to the imposition of multiple sentences at sentencing, the state appellate court enforced the rule when it reviewed his double jeopardy assignment of error for plain error, and the contemporaneous objection rule is an adequate and independent basis to deny federal habeas review.

The final *Maupin* prong is whether the petitioner can show cause and prejudice to excuse the default. Here, Pedraza argued neither cause nor prejudice regarding his failure to object to the trial court's imposition of multiple sentences to excuse the default. Accordingly, all four prongs of the *Maupin* analysis are met, and Pedraza's double jeopardy issue is procedurally defaulted.

### C.  Ground Four:  Ineffective Assistance of Appellate Counsel

Pedraza's fourth ground for habeas corpus relief asserts that his constitutional Due Process, Equal Protection, and effective assistance of counsel rights were violated when his appellate counsel failed to raise various issues in his direct appeal. (ECF Doc. 1, p. 10). Respondent argues that this ground is procedurally defaulted under a *Maupin* analysis. (ECF Doc. 13, p. 15).

I find that Pedraza procedurally defaulted this claim both under *Maupin* and for failing to exhaust his state court remedies.

Pedraza filed his Application to Reopen his direct appeal, alleging ineffective assistance of appellate counsel, on October 18, 2021, nearly 18 months after the Ninth District Court of Appeals journalized his direct appeal on April 27, 2020. Ohio Rule of Appellate Procedure 26(B)(1) states, in pertinent part: "An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." The Ninth District

Court of Appeals did not find good cause for Pedraza's delay in filing and accordingly denied the application to reopen on December 6, 2021.

Therefore, Pedraza did not comply with Ohio Rule of Appellate Procedure 26(B) because he did not file within the statutory timeframe of 90 days. The Ninth District Court of Appeals enforced the procedural rule by denying his motion as untimely. Dismissal of an application to reopen pursuant to Ohio Appellate Rule 26(B) on timeliness grounds is an adequate and independent state procedural bar preventing habeas review. *See, e.g.*, *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("Because the timeliness requirements of Rule 26(B) were firmly established and regularly followed by September 1998, they are an adequate and independent state procedural bar."). Under the final *Maupin* prong, Pedraza did not argue cause or prejudice. Therefore, all four *Maupin* prongs are established, and this ground is procedurally defaulted.

A petitioner may also procedurally default a claim if he or she fails to raise and pursue that claim through the state court's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If state law no longer allows the petitioner to raise the claim once a petitioner filed a federal habeas petition, then it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28, (1982); see also *Coleman v. Thompson*, 501 U.S. 722, 731-32, (1991); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.").

Pedraza did not appeal the Ninth District Court of Appeals' decision denying his Application to Reopen to the Ohio Supreme Court. To satisfy the fair presentation requirement in a federal habeas petition, a constitutional claim for relief must be presented to the state's highest court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d

480, 483 (6th Cir. 1990). Because Pedraza did not appeal the ineffective assistance of appellate

counsel issue to the Ohio Supreme Court, he has procedurally defaulted this claim. See Ohio S.

Ct. Prac. R. 7.01(A)(4)(c) (disallowing motions for delayed appeals to the Ohio Supreme Court

from an Ohio Appellate Rule 26(B) decision).

Accordingly, find that Pedraza's fourth ground is procedurally defaulted.

### D.    Ground Three: Speedy Trial

In his third ground, Pedraza argues that he was not brought to trial in a timely manner and

the trial court's tolling of the case was improper. (ECF Doc. 1, p. 9). In his argument under this

ground, Pedraza acknowledges that "prior Appellate Counsel failed to address the speedy trial

issue" in his direct appeal. (*Id.*). In response, Respondent argues that this ground is procedurally

defaulted because Pedraza "failed to raise the issue before all the Ohio appellate courts in direct

review." (ECF Doc. 13, p. 13).

I agree with Respondent and find that Pedraza procedurally defaulted this ground.

In Ohio, claims must be raised on direct appeal, if possible, or the doctrine of res judicata

bars litigation of those issues in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr.

Inst.*, 738 F.3d 741, 751 (6th Cir. 2013), citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)).

Consequently, if an Ohio petitioner fails to raise a claim that could have been raised on direct

appeal, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).

As Pedraza acknowledged in his Petition, he did not bring a speedy trial assignment of

error in his direct appeal, and thus did not pursue this claim through Ohio's ordinary appellate

procedures.  (ECF Doc. 1, p. 9). The claim could have been raised but was not, as acknowledged

in his Application to Reopen alleging ineffective assistance of appellate counsel. (ECF Doc. 13-

1, p .299). Consequently, this ground is procedurally defaulted for failing to exhaust his state

court remedies and those remedies are no longer available to him. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

## VI.    Excusing Procedural Default for Grounds Two, Three, and Four

For the foregoing reasons, Pedraza's second, third, and fourth grounds for habeas relief are procedurally defaulted. However, as previously stated, a federal habeas court may, in certain circumstances, reach the merits of a procedurally defaulted ground through court-created safety valves. See *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To reach the merits of a procedurally defaulted claim, a petitioner must demonstrate cause and prejudice excusing the default or that there is new evidence that proves a petitioner's actual innocence. *Id.*

Pedraza has not argued, much less demonstrated, cause or prejudice to excuse the default. Similarly, Pedraza has not called the Court's attention to any new evidence that prove his actual innocence. Therefore, Pedraza has not excused his procedurally defaulted claims.

As such, I recommend that Pedraza's second, third, and fourth grounds be dismissed as procedurally defaulted.

## VII.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is denied on procedural

grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

If the District Court accepts my recommendation, Pedraza will not be able to show that reasonable jurists could disagree with the District Court's resolution of his ineffective assistance of counsel claim. Because Pedraza was not the subject of a search, his counsel was not deficient for declining to raise a Fourth Amendment challenge on his behalf, and the state court did not err in its decision. Furthermore, the dismissal of his second, third, and fourth grounds as procedurally defaulted is not debatable among jurists. Pedraza did not follow adequate state court procedural rules that were enforced against him and, at times, did not appeal these issues to give the state court a fair opportunity to address them. Because jurists of reason would not find debatable the conclusion that Pedraza's second, third, and fourth grounds are procedurally defaulted, I recommend that no certificate of appealability issue in this case.

**VIII.   Recommendation**

For the foregoing reasons, I recommend that Pedraza's Petition for a writ of habeas corpus be denied as to Ground One and that the Petition be dismissed as to Grounds Two, Three, and Four. I further recommend he be denied a certificate of appealability.

Dated: July 16, 2024

Reuben J. Sheperd
United States Magistrate Judge

28

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).